UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STANLEY WILLIAMS,

                Plaintiff,               Case No. 1:22-cv-825

v.                                 Honorable Ray Kent

UNKNOWN COOLEY et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Cooley and Anderson. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Felver: (1) Plaintiff's Eighth Amendment claims regarding the denial of showers and meals; and (2) Plaintiff's Fourteenth Amendment claims regarding the deprivation of property, interference with parole, and deprivation of due process in connection with misconduct proceedings. Plaintiff's Eighth Amendment failure to protect claim against Defendant Felver remains in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Correctional Officers Unknown Cooley, Unknown Anderson, and Unknown Felver.

Plaintiff alleges that on June 20, 2022, he was assaulted by three other prisoners who entered his cell. (ECF No. 1, PageID.7.) Plaintiff avers that the attack was videotaped, and that Defendant Felver stood at the door to his cell and allowed "these white prisoners to assault [him] before [Defendant Felver] decided to verbally intervene." (*Id.*, PageID.4.) Plaintiff received immediate medical treatment offsite for injuries to his face, eye, and head. (*Id.*)

Subsequently, Defendant Felver issued a Class I misconduct ticket for fighting to Plaintiff. (*Id.*, PageID.7.) Plaintiff contends that he did so "in an attempt to cover up the assault." (*Id.*) Plaintiff indicates that he was found guilty of the misconduct and that he should not have been because he did not participate in fighting. (*Id.*, PageID.4.) Plaintiff avers that he lost his conditional parole grant because of this incident. (*Id.*, PageID.5.) He also alleges that he has suffered deprivations such as being denied showers in segregation, being denied meals on one day, and having officers steal his property. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert claims for violations of his Eighth and Fourteenth Amendment rights. Plaintiff seeks expungement of the misconduct and reinstatement of his parole grant. (*Id.*, PageID.6.) He also requests a restraining order against Defendants. (*Id.*) Plaintiff also seeks compensatory, punitive, and exemplary damages. (*Id.*)

4

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Claims Against Defendants Cooley and Anderson

Plaintiff names Officers Cooley and Anderson as Defendants; however, Plaintiff wholly fails to name these Defendants in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. *See* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plan statement of the claim showing that the pleader is entitled to relief"). For that reason alone, Plaintiff's claims against Defendants Cooley and Anderson will be dismissed.

### B.      Eighth Amendment Claims

#### 1.      Failure to Protect

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*

6

*v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient

7

inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

In his complaint, Plaintiff alleges that Defendant Felver stood at his cell door and allowed three other inmates to assault Plaintiff before verbally intervening. (ECF No. 1, PageID.4.) Plaintiff avers that he received immediate offsite medical attention for injuries sustained from the assault. (*Id.*) Based on the foregoing, Plaintiff has set forth a plausible Eighth Amendment failure to protect claim against Defendant Felver.

### 2. Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Denial of Showers

Plaintiff alleges that he has been denied showers while in segregation. (ECF No. 1, PageID.5.) The Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x

622, 624 (6th Cir. 2003) (finding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (concluding that the denial of showers and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (concluding that an eleven-day stay in an unsanitary cell was not unconstitutional because of the relative brevity of the stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The refusal to allow the occasional shower constitutes a mere temporary inconvenience. *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (finding the denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (finding the denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (finding the deprivation of a single shower does not implicate the Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at

the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment). Here, Plaintiff's complaint is wholly devoid of allegations regarding the period during which he was denied showers. Moreover, nothing in the complaint suggests that any of the named Defendants were responsible for denying him showers. Furthermore, Plaintiff does not allege that he was denied the ability to maintain hygiene. Accordingly, his reference to being denied showers does not rise to the level of an Eighth Amendment violation.

### b.    Denial of Meals

Plaintiff avers that he was not fed on June 20, 2022. (ECF No. 1, PageID.5.) Again, nothing in the complaint suggests that any of the named Defendants were personally involved in denying Plaintiff meals on that date. In any event, while the Eighth Amendment "imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ," *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832), the deprivation of a few meals for a limited time does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (finding that the denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (concluding that the denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v.*

*Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at \*14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Plaintiff's allegation that he was not fed on one day falls short of stating a claim under the objective prong of the deliberate indifference standard. Consequently, Plaintiff does not state a plausible claim based upon the denial of meals. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

### C.   Fourteenth Amendment Claims

#### 1.   Deprivation of Property

Plaintiff vaguely suggests that officers have taken his property since his assault by other inmates. (ECF No. 1, PageID.5.) As an initial matter, nothing in the complaint suggests that the named Defendants have personally stolen Plaintiff's property. In any event, to the extent Plaintiff asserts a due process violation premised upon the deprivation of property, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit

12

authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (eff. Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim premised upon the deprivation of his property will be dismissed.

### 2. Due Process–Misconduct Proceedings

Plaintiff avers that Defendant Felver issued him a false misconduct for fighting and that he was ultimately found guilty of that misconduct. (ECF No. 1, PageID.4.) The Court construes Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim against Defendant Felver.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that

13

one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As noted above, Plaintiff contends that he was found guilty of fighting, a Class I misconduct. A Class I misconduct is a "major" misconduct for which prisoners may be deprived of good time or disciplinary credits. *See* MDOC Policy Directive 03.03.105, ¶ C and Attach. A (eff. Apr. 18, 2022). In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather

the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer

prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff is serving an indeterminate sentence imposed on December 13, 1999, for crimes

committed on May 30 and July 19, 1999. *See* Offender Tracking Information System (OTIS),

https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=301961 (last visited Sept.

28, 2022). The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and

forfeiture of disciplinary credits[2] for prisoners convicted for crimes occurring after April 1, 1987.

In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary

credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects

parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on

this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct

citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty

interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912;

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

*accord Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010)

(Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct

sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as*

*judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty

interest, Plaintiff has no due process claim based on any loss of disciplinary credits. *See Bell v.*

*Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and

significant" deprivation. *Sandin*, 515 U.S. at 484. Here, Plaintiff mentions that his expected release

on parole was suspended as a result of the misconduct conviction. While Plaintiff would

presumably claim that such an action was a significant deprivation, as explained above, Plaintiff

had no constitutional or inherent right to release before the expiration of his sentence. *See*

*Greenholtz*, 442 U.S. at 7. Moreover, Plaintiff fails to allege that his placement in segregation as a

result of the misconduct constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S.

at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for

30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has

held that placement in administrative segregation for two months does not require the protections

of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days

in segregation is not atypical and significant). Instead, generally only periods of segregation lasting

for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*,

734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty

interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of

segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)

(remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of

segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

### 3.    Due Process–Interference with Parole

Plaintiff also suggests that his grant of parole was revoked after the assault and subsequent misconduct. (ECF No. 1, PageID.5.) Again, Plaintiff's complaint is wholly devoid of allegations suggesting that any of the named Defendants were involved in this revocation.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff, however, fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing

17

validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

The Court recognizes that Plaintiff alleges that his parole was "revoked." (ECF No. 1, PageID.5.) However, Plaintiff's complaint makes clear that he was never actually released from prison. It appears that Plaintiff uses the word "revoked" when rescinded is more apt.

The fact that the Michigan Parole Board set a conditional date for Plaintiff's release on parole did not create a liberty interest in release. The Supreme Court has considered a substantially similar scenario:

> In *Jago v. Van Curen*, 454 U.S. 14, 14–18 . . . (1981), the Ohio Adult Parole Authority ("OAPA") ordered a prisoner's release on parole on a date certain. The prisoner attended and completed required prison pre-release classes. Before the prisoner was released from prison on parole, the OAPA learned that the prisoner had not been truthful in his parole interview or in the parole plan submitted to his parole officers and, therefore, rescinded its earlier release decision. The Supreme Court recognized that the new parole decision visited a 'grievous loss" on the prisoner but, nevertheless, held that because the prisoner had not been physically released from prison, and because Ohio law allowed for the suspension or rescission of a projected parole release at any time before the prisoner was actually physically released, the prisoner did not have a protected liberty interest in release sufficient to invoke the procedural protections of the Due Process Clause. *Id.* at 17.

*Corsetti v. Rapelje*, No. 13-cv-14138, 2013 WL 6546011, at *3 (E.D. Mich. Dec. 13, 2013) (relying upon *Jago* to dismiss a petitioner's § 2254 petition challenging the Parole Board's

decision to suspend its decision to release petitioner on parole). Michigan law provides that "a parole order may be rescinded at the discretion of the parole board for cause before the prisoner is released on parole." *See* Mich. Comp. Laws § 791.236(2). Moreover, "nothing in Michigan's statutes or regulations limits the Board's discretion during the period between selection or announcement of a parole date and an inmate's actual release on parole." *Hughes v. White*, No. 02-CV-73957-DT, 2003 WL 21911216, at *3 (E.D. Mich. July 30, 2003).

Under this authority, Plaintiff had no reasonable expectation of liberty until he had served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *See Greenholtz*, 442 U.S. at 11. "A constitutionally significant change of status occurs only after the prisoner has experienced rather than merely expected the liberty of actual release on parole from physical custody." *Hughes*, 2003 WL 21911216, at *4. Plaintiff simply did not have "a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings." *Sharp v. Leonard*, 611 F.2d 136, 137 (6th Cir. 1979). Even if Defendants' actions somehow interfered with Plaintiff's anticipated parole, that interference does not implicate the protections of the Due Process Clause. Plaintiff's Fourteenth Amendment claims concerning interference with his parole will, therefore, be dismissed.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Cooley and Anderson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Felver: (1) Plaintiff's Eighth Amendment claims regarding the denial of showers and meals; and

(2) Plaintiff's Fourteenth Amendment claims regarding the deprivation of property, interference with parole, and deprivation of due process in connection with misconduct proceedings. Plaintiff's Eighth Amendment failure to protect claim against Defendant Felver remains in the case.

An order consistent with this opinion will be entered.


Dated:   October 14, 2022                         /s/ Ray Kent
                                          Ray Kent
                                          United States Magistrate Judge